UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD GENNA,

           Plaintiff,

    v.

SALLIE MAE, INC.,

           Defendant.

11 Civ. 7371 (LBS)

**MEMORANDUM & ORDER**

---

SAND, J.

In this action, Plaintiff Richard Genna ("Genna") asserts various claims against Defendant Sallie Mae, Inc. ("Sallie Mae"), a third-party loan servicer. Genna alleges that Sallie Mae committed, *inter alia*, fraudulent misrepresentation, breach of fiduciary duty, and breach of contract in relation to its servicing of Genna's student loans.

Sallie Mae has moved to dismiss Genna's Complaint. For the following reasons we grant in part and deny in part Sallie Mae's motion.

## I. Background[1]

In 2007, Genna borrowed $22,595 in student loans from Citibank, N.A.; in 2010, he initiated auto-debit payments with Citibank; and in 2011, Citibank sold Genna's loan to Sallie Mae. This is where Genna's problems began. Citibank, in a July 2011 letter to Genna informing him of the sale of his loan to Sallie Mae, reassured Genna that informed him that "nothing about the servicing would change"—and, specifically, that "any active auto-debits ... would continue uninterrupted." Compl. ¶ 7. On July 22, 2011, Genna received an email from Sallie Mae informing him of its acquisition of his loan and stating:

---

[1] The following facts are based on Genna's allegations in the Complaint ("Compl."), filed September 26, 2011.

1

> If you're currently enrolled in Citibank's auto-debit payment program, your monthly payment withdrawals will continue with Sallie Mae without interruption using the checking or savings account information you previously provided. If you prefer to not have your payments automatically debited by Sallie Mae, please contact Citibank ... as soon as possible. However, please note that you may lose eligibility for an interest rate reduction benefit if you terminate your participation in the auto-debit program.

Compl. ¶ 8. Despite Sallie Mae's statement that Genna's auto-debit payments would continue without interruption, Genna discovered on September 5, 2011, that not only was he not enrolled in auto-debit, but that his loan was in default. Genna immediately set up auto-debit via Sallie Mae's website—successfully, he believed, since he soon received an email confirming that his "request for auto-debit was submitted ... and [was] currently being reviewed." The email further noted that his "request [could] take up to 10 business days to be reflected on [his] account." Compl. ¶¶ 9–13.

As a precaution, Genna telephoned Sallie Mae two days later to confirm that his request for auto-debit had gone through and to inquire about the status of his loan. In what, it seems, would become a familiar pattern, Sallie Mae informed him that not only was his loan still in default but, despite the confirmation email he had received two days prior, no auto-debit enrollment was pending. Genna explained the foregoing history to a customer service representative who assured him that he "was being issues [sic] a 60 day forbearance, during which time no payment would be due, and that his representative would now submit his request for enrollment in the auto-debit program." Compl. ¶¶ 14–16.

Notwithstanding this conversation, Genna received an email from Sallie Mae on September 25, 2011 with a hyperlink to his statement. The latter revealed that despite Sallie Mae's explicit statements, Genna had been granted no forbearance, his loan remained in

2

default, and he was now two months in arrears. Sallie Mae had, moreover, taken the extra step of reporting his alleged default to the credit reporting agencies. Compl. ¶¶ 18–19.

Genna responded by hiring counsel, who contacted Sallie Mae and attempted to enroll Genna into auto-debit and to have Sallie Mae credit Genna's past-due balance. After speaking to three different representatives, Genna's counsel reached a so-called "floor supervisor" named Alex, who, while admitting fault, stated that he was personally unable to oblige Genna's requests, but that Sallie Mae's Consumer Advocate Department would be able to assist him. Compl. ¶¶ 20–22. No such assistance was forthcoming. Genna's counsel was told by a representative—who refused to provide her name or other identifying information—to set up auto-debit through Sallie Mae's website and, in the meanwhile, to make month-to-month payments. Upon being advised by Genna's counsel that Sallie Mae had breached its promises and thereby, among other things, damaged Genna's credit, Sallie Mae declined further cooperation and expressly invited Genna to bring suit. Compl. ¶¶ 25–29.

## II. Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999). "To survive dismissal, the plaintiff must provide the grounds upon which his claims rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'" *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, the plaintiff's complaint must include "enough facts to state a claim of relief that is plausible on its face." *Id.* at 1940 (citing *Twombly*, 550 U.S. at 570). Plausibility, in turn, requires that the allegations in the complaint

3

"raise a reasonable expectation that discovery will reveal evidence" in support of the claim. *Twombly*, 550 U.S. at 556.

On a motion to dismiss, a court is not limited to the four corners of the complaint. A court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## III. Discussion

### a. Breach of Implied Covenant of Good Faith and Fair Dealing (Counts 1 and 5)

Genna's first and fifth causes of action are that Sallie Mae breached the implied covenant of good faith and fair dealing. Sallie Mae rejoins that "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accidental Ins., Co.*, 310 F.3d 73, 81 (2d Cir. 2002). This is generally true, except in cases where the good faith and fair dealing claim is "based on allegations different than those underlying the accompanying breach of contract claim." *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98 Civ. 4028, 1999 U.S. Dist. LEXIS 15593, at *19 (S.D.N.Y. Sept. 30, 1999). Put differently, a "claim for breach of implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–244 (S.D.N.Y. 1997) (citations and quotations marks omitted).

This is not the case here. Genna's breach of contract claim, *see infra*, alleges that Sallie Mae breached the loan agreement by refusing to accept payment, which Genna claims to have offered on multiple occasions in accordance with Sallie Mae's terms. In contrast, Genna's claim

4

asserting breach of the implied covenant of good faith and fair dealing is based on Sallie Mae's statements that it was granting Genna a 60-day forbearance, servicing his loan in the same manner as had Citibank, and enrolling him in auto-debit. While broadly related insofar as they emerge from the same transaction and occurrence, the allegations nonetheless assert distinct potentially culpable behavior by Sallie Mae. Indeed, Sallie Mae concedes as much when it argues that "[t]here is no language in the contract requiring Sallie Mae to accept payment in any particular manner, or providing any terms regarding the method of payment." Mem. Supp. Def.'s Mot. Dismiss ("Sallie Mae Brief") 5.

Sallie Mae's motion to dismiss Counts 1 and 5 is hereby denied.

### b. Fraudulent Misrepresentation (Count 2)

Genna's second count alleges that Sallie Mae committed fraud when it falsely stated that it was granting Genna a 60-day forbearance, servicing his loan in the same manner as had Citibank, and enrolling him in auto-debit. Sallie Mae responds, as it did in Counts 1 and 5, by arguing that Genna's breach of contract claim subsumes his fraud claim.

Under New York law, a fraud claim will generally not lie if it arises "out of the same facts as plaintiff's breach of contract claim," *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 20 F.3d 175, 196 (2d Cir. 2001), unless a plaintiff successfully alleges "(1) a legal duty separate and apart from the contractual duty to perform ... (2) a fraudulent representation collateral or extraneous to the contract ... or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Papa's-June Music v. McLean*, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996) (citations omitted).

"For a fraudulent misrepresentation to be collateral or extraneous to a contract, it must be a promise to do something other than what is expressly required by the contract." *W.B. David & Co. Inc. v. DWA Communications, Inc.*, No. 02 Civ. 8479, 2004 U.S. Dist. LEXIS 2954,

at \*14 (S.D.N.Y. Feb. 26, 2004); *see also Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 434 (2d Cir. 1995) ("A fraud action is permitted, however, where the plaintiff alleges that the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform."). Under this definition, it is clear that Sallie Mae's statements were collateral or extraneous, a fact that, again, Sallie Mae itself concedes by averring that "[t]here is no language in the contract requiring Sallie Mae to accept payment in any particular manner, or providing any terms regarding the method of payment." Mem. Supp. Def.'s Mot. Dismiss 5. Regardless, Genna has alleged sufficient facts to make it plausible to infer that, by representing that it was granting Genna a 60-say forbearance and enrolling him auto-debit, Sallie Mae engaged in "other fraudulent conduct besides entering the contract with no intention to perform," since these statements postdate the contract. *Grappo*, 56 F.3d at 434.

Sallie Mae further argues that Genna's fraud claim is barred by the economic loss rule. Sallie Mae Brief at 10. Courts in this district are divided, however, as to whether the economic loss rule applies to fraud claims. *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 246 (S.D.N.Y. 2006) (collecting cases). The Court of Appeals for the Second Circuit has not squarely addressed the applicability of the economic loss rule to fraud claims, but the cases make clear that the economic loss rule will not apply where the damages sought are for a "harm distinct" from the contract. *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 17 (2d Cir. 2000). Under this test it is clear that the economic loss rule does not apply to Genna's fraud claim. The distinct harm in this case is the combination of, first, Sallie Mae's unfulfilled statements that it was granting Genna a forbearance, transferring the conditions of his servicing, and enrolling him in auto-debit, which together arguably caused Genna to default on his loans; and second, Sallie Mae's reporting the default to credit reporting agencies, thereby damaging Genna's credit score. Put differently, the harm that Genna asserts is not simply that

Sallie Mae's conduct deprived him of the benefit of his bargain, but, additionally, that Sallie Mae's conduct damaged his credit score—and, to this end, Genna seeks more than merely contractual damages.[2] *See Fort Howard Paper Co. v. Willliam D. Witter, Inc.*, 787 F.2d 784, 794 (2d Cir. 1986) (declining to apply the economic loss rule to fraud claim where plaintiff sought to recover more than just contractual damages).

Sallie Mae's final argument that Genna has failed to plead his fraud claim with sufficient particularity is without merit. As is clear from the recitation of facts in Part I of this opinion, *supra*, Genna has specified the fraudulent statements, the date that the statements were made, and—insofar as is reasonably possible in the context of telephonic conversations with customer service representatives—who made the statements.

Sallie Mae's motion to dismiss Count 2 is denied.

### c. Breach of Fiduciary Duty (Count 3)

We dismiss Genna's claim for breach of fiduciary duty, because no such duty generally exists between a lender and a borrower. *See Bank Leumi Trust Co. v. Block 3102 Corp.*, 180 A.D.2d 588, 580 N.Y.S.2d 299 (1st Dep't 1992); *Manufacturer's Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993). *See also* Daniel R. Fisher, *The Economics of Lender Liability*, 99 YALE L.J. 131, 146–147 (1989). Nor has Genna pled facts to suggest that, despite the general rule, there exists in this case a fiduciary relationship "based upon trust or confidence by one

---

[2] In its reply brief, Sallie Mae states, without providing any support, that Genna's claim is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(a) *et seq.* Reply Mem. Further Supp. Def.'s Mot. Dismiss 4. We disagree. The FCRA imposes duties on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *See Kane v. Guar. Residential Lending, Inc.*, No. 04 Civ. 4847, 2005 U.S. Dist. LEXIS 17052, at *6 (E.D.N.Y. May 9, 2005). With respect to the furnishers' duty—the only duty arguably applicable here—15 U.S.C. §§ 1681s-2(a) and (b) require that furnishers "report accurate information and … correct inaccurate information" as well take certain steps once a credit reporting agency notifies furnishers that there is a dispute as to the information provided. The claims here, while certainly encompassing consumer protection writ large, are not covered by 15 U.S.C. §§ 1681s-2(a) and (b), since the issue is not whether the information reported by Sallie Mae was or was not accurate, but rather whether Sallie Mae's conduct contributed to Genna's default, which, in turn, negatively affected Genna's credit score.

person in the integrity and fidelity of another." *Penato v. George*, 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (Sup. Ct. 1976).

Count 3 is hereby is dismissed.

### d. Negligent Misrepresentation (Counts 4 and 6)

To sustain a negligent misrepresentation claim under New York law—Genna's third count—a plaintiff must prove that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplies in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Genna, we conclude, has not adequately pled a "special relationship" in satisfaction of prong (1).

While certainly similar to a fiduciary relationship, a special relationship "need not rise to that same level." *Bombardier Capital, Inc. v. Naske Air GMHB*, No. 02 Civ. 10176, 2003 U.S. Dist. LEXIS 16173 (S.D.N.Y. Sept. 17, 2003). Nonetheless, "[s]omething more than the trust and reliance between an ordinary buyer and seller must be established." *St. Paul Fire & Marine Ins. Co. v. Health Fielding Ins. Broking*, 976 F. Supp. 198, 200 (S.D.N.Y. 1996) (citations omitted).

This court is well aware that "whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage." *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258, 2004 U.S. Dist. LEXIS 6904, at *24–25 (S.D.N.Y. Apr. 21, 2004) (citations and quotations marks omitted). But the case law is sufficiently clear and consistent that in New York "an arm's length borrower-lender relationship ... does not support a cause of action for negligent misrepresentation," that we are compelled to dismiss Genna's claims.

8

*Dobroshi v. Bank of Am., N.A.*, 65 A.D.3d 882, 884, 886 N.Y.S.2d 106, 109 (1st Dep't 2009) (collecting cases); *Interallianz Bank AG v. Nycal Corp.*, No. 93 Civ. 5024, 1994 WL 177745, at *6 (S.D.N.Y. May 6, 1994).

Sallie Mae's motion to dismiss Counts 4 and 6 is granted.

### e. Breach of Contract and Promissory Estoppel (Count 7)

To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove the existence of a contract, a breach of that contract, and damages resulting from the breach. *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004). As Genna frames his claim, Sallie Mae breached the loan agreement "by failing to accept [Genna's] payment, which payment was duly offered on four distinct occasions, in accordance with the terms provided by [Sallie Mae]." Compl. ¶ 50.

Genna's claim does not withstand scrutiny. Genna has simply failed to plead any facts that suggest that he offered to pay "on four distinct occasions." Genna, it is true, repeatedly attempted to enroll in auto-debit, but this is not the same as offering to make payments, since —as Genna himself concedes—he was able to pay manually. Compl. ¶ 26. Without allegations that Sallie Mae refused payment altogether—an entirely different claim that might warrant a different outcome—Genna's breach of contract claim fails. We now turn to Genna's promissory estoppel claim.

Under New York law, it is "impermissible to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties," *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987). In other words, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract

9

for events arising out of the same subject matter." *Altomare v. Wells Fargo Sec., LLC*, 09 Civ. 9702, 2012 U.S. Dist. LEXIS 19209, at *34–35 (S.D.N.Y. Feb. 15, 2012) (citation omitted).

In this case, however, the scope of the contract does not cover this dispute, since—as Sallie Mae itself asserts—"there is no language in the contract requiring Sallie Mae to accept payment in any particular manner, or providing any terms regarding a method for payment." Sallie Mae Brief 5. As such, assuming that Genna meets the three elements for promissory estoppel under New York law, he is entitled to proceed on a quasi contract theory.

In New York, a plaintiff asserting promissory estoppel must prove, "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev.*, 47 F.3d 39, 44 (2d Cir. 1995) (quotation marks and citations omitted). The injury, moreover, must be "unconscionable," defined by courts in this circuit as "beyond that which flows naturally from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 826 (2d Cir. 1994). For example, where the injury is "lost profits, lost fees, foregone business opportunities, or damage to business reputation," courts in this circuit have rejected as not sufficiently unconscionable promissory estoppel claims. *See, e.g., 720 Lex Acquisition LLC v. Guess? Retail, Inc.*, No. 09 Civ. 7199, 2011 U.S. Dist. LEXIS 123180, at *11 (S.D.N.Y. Oct. 20, 2011).

Sallie Mae's telephonic statement that it was enrolling Genna in auto-debit and granting him a 60-day forbearance was clear and unambiguous. Genna foreseeably relied insofar as he assumed that Sallie Mae would not enforce the repayment of his debt for approximately two months, and that, presumably, his enrollment in auto-debit would serve to settle any outstanding payments accounts. With respect to Genna's injury, this Court found, *supra* III.b., that the damages Genna seeks are more than the merely expectation damages; or,

in the language of *720 Lex Acquisitions*, that Genna seeks more than "lost profits, lost fees, foregone business opportunities, or damage to business reputation." Under the *Merex* definition, Genna's injury is deemed unconscionable.

Sallie Mae's motion to dismiss Count 7 is denied.

### f. Unfair Practices (Count 8)

"General Business Law § 349 prohibits deceptive and misleading business practices and its scope is broad indeed." *Wilner v. Allstate Inc. Co.*, 71 A.D.3d 155, 893 N.Y.S.2d 208, 212 (2d Dep't 2010). A plaintiff asserting a § 349 claim must prove "that the challenged act or practice was consumer-oriented; ... that it was misleading in a material way; [and] that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E. 2d 608, 611, 709 N.Y.S.2d 892 (N.Y. 2000).

In order to satisfy the first prong, a plaintiff must allege facts suggesting that defendant's conduct has or had a "broad impact on consumers at large." *USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 346 F. Supp. 2d 468, 471 (S.D.N.Y. 2004). In other words, claims arising from private disputes that are unique to the parties are not actionable. *See FLB, LLC v. 5Linx*, No. 06 Civ. 6463, 2011 U.S. Dist. LEXIS 51975, at *29 (W.D.N.Y. May 13, 2011). Genna alleges that Sallie Mae "deceives the public generally and not just Plaintiff by suggesting that their customers are not entitled to methods of payment stated on their website." Genna Brief 14. Standing alone, however, this statement is conclusory. Absent further facts suggesting that this is more than an isolated event between the parties—that this was in fact a deceptive business practice aimed at the public—we must dismiss Count 8 for failure to state a claim under § 349. *See Corazzini v. Litton Loan Servicing LLP*, No. Civ., 2010 U.S. LEXIS 27398, *19–21 (N.D.N.Y. Mar. 23, 2010).

Sallie Mae's motion to dismiss Count 8 is granted.

11

### g. Preemption

We turn, last, to Sallie Mae's argument that Genna's causes of action in tort and contract are preempted by the Higher Education Act of 1965, 20 U.S.C. §§ 1001-115 ("HEA"). If Sallie Mae is correct, we must dismiss Genna's case.

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supreme Court, in interpreting that clause, has held that "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (citation and quotations marks omitted). Federal preemption occurs where Congress has "explicitly stated [as much] in the statute's language," where state law "actually conflicts with federal law," or where "federal law so thoroughly occupied a legislative field as to make reasonable inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992) (citations and internal quotation marks omitted). Our inquiry addresses each type in turn.

### 1. Field Preemption

Turning first to the third type of preemption, field preemption, it is clear that there is none. No court in any circuit that has considered the matter—and certainly not the Court of Appeals for the Ninth Circuit, which Sallie Mae cites in support of its argument—has found that field preemption applies to the HEA. *Chae v. SLM Corp*, 593 F.3d 936, 941–942 (9th Cir. 2010) (finding that "field preemption does not apply to the HEA"). *See also Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir.

1999) ("federal education policy regarding [private lending to students] is not so extensive as to occupy the field"). We see no reason to disturb these rulings.[3]

## 2. Express Preemption

The next question, then, is whether the Higher Education Act expressly preempts the above state common law tort and contract claims against third-party loan servicers. Sallie Mae has not directed this Court to any expressly preemptive statutory language, though the HEA does, in fact, contain language that expressly preempts state law in a limited number of areas. *See, e.g.*, 20 U.S.C. §§ 1078(d), 1091a(a)(2)(b), 1091a(b)(1)-(3), 1095a(a), 1098g. Congress, these sections clarify, intended the HEA to preempt state usury laws, statutes of limitations, limitations on recovering the costs of debt collection, contractual infancy defenses, wage garnishment limitations, and disclosure requirements.

The only statutory section that might conceivably apply to the instant case is § 1098g, which reads that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title VI of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of state law." In *Chae*, the Ninth Circuit found that § 1098g expressly preempted plaintiffs' misrepresentation claims. *Chae*, 593 F.3d at 942–944. The plaintiffs in *Chae* had argued that "Sallie Mae employs 'unfair' and 'fraudulent' business practices by using billing statements and coupon books that trick borrowers into thinking that interest is bring calculated via the installment method when Sallie Mae really uses simple daily calculation." *Chae*, 593 F.3d at 943. Plaintiffs allegations, in other words, were that the forms, coupon books, and billing statements used by Sallie Mae misrepresented the truth. The Ninth Circuit

---

[3] We are also mindful, in this case, that the loan agreement here contemplates that the HEA should not be interpreted as preempting all state law. It states, in applicable part, that "[t]he terms of this Note will be interpreted according to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), other applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in additional to those stated in this Note." Genna Brief Ex. C, at 5.

13

reasoned, in finding express preemption, that "[a]t bottom, the plaintiffs' misrepresentations claims are improper-disclosure claims." *Id.* at 942. Because the billing statements, coupon books and standardized forms used by Sallie Mae—and challenged by the plaintiffs—complied with federal regulations governing such instruments, then, *ipso juris*, such billing statements and standardized forms could not "simultaneously be misleading under state law." *Id.* at 942.

The Ninth Circuit's logic is unassailable, but it has no application to the facts of this case. In *Chae*, the plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law. In contrast, the statements at issue here were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law. There is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer like Genna in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity. Sallie Mae has not shown that § 1098g, or anything else in the HEA, expressly preempts Genna's claims.

### 3. Conflict Preemption

We move on to conflict preemption. Conflict preemption of state law occurs "where it is impossible for a private party to comply with both state and federal law" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (internal quotations omitted). Under the second inquiry—the "purposes and objectives" inquiry—the question to be asked and answered is "whether the state law interferes with a method the federal law uses to promote its goal." *United States Smokeless Tobacco Mfg. Co., LLC v. City of New York*, 703 F. Supp. 2d 329, 334 (S.D.N.Y. 2010) (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). "[S]tate causes of action are not pre-empted solely because they impose

14

liability over and above that authorized by federal law." *California v. ARC America Corp.*, 490 U.S. 93, 105 (1989) (internal citations omitted).

Before moving on to Sallie Mae's arguments, an observation. Our conflict preemption analysis is—and, indeed, must be—informed by the well-established principle that, because Genna's claims in tort and contract fall squarely within New York's long-established police power regulations, we review Sallie Mae's arguments in light of the presumption against preemption. *Cipollone*, 505 U.S. at 518. "Congress," the United States Supreme Court has made plain, "does not cavalierly preempt state law." *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996). In cases like this one, "pre-emption is ordinarily not to be implied absent an actual conflict." *English v. General Elec. Co.*, 496 U.S. 72, 90 (1990) (internal quotations marks and citations omitted).

"[W]hen interpreting statutes, context matters." *Shady Grove Orthopedia Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1457 n.16 (2010). Sallie Mae seizes on the following expansive language, taken from the Federal Register, attributed to Lauro Cavasos, the Secretary of Education at the time, and quoted in *Chae*: "[E]xposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." *Chae*, 593 F.3d at 945 (quoting *Brannan v. United States Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996)). Armed with this decontextualized fragment, Sallie Mae argues that state law claims must be preempted lest they interfere with the levers and pulleys of the federal statutory scheme. But this argument cuts too broad a swath. As is clear from examining the source of the citation, Secretary Cavasos was concerned with the effect of state law on "actions to collect loans," on "collection action," and on "collection practices"—not with the effect of state law on loan servicing. 55 FR 40120. To read it more broadly than what

is clearly set out in the Federal Register, as Sallie Mae urges us to do, would be, in effect, to find field preemption, which precedent precludes us from doing.

Sallie Mae all but concedes our reading. It cites *Brannan v. United States Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996), for the proposition that "any state law claim prohibiting, restricting, or imposing burdens on any pre-litigation activity of a third-party debt collector acting pursuant to the guaranteed student loan regulations is preempted by federal law." Sallie Mae Brief 15 (quoting *Brannan*, 94 F.3d at 1266). But *Brannan*, as the above quote makes plain, was a case about debt collection, not loan servicing. These are separate activities, a fact acknowledged by Secretary Cavasos who declared that the scope of preemption was "narrowly tailored" and that it "only applie[d] to action to collect loans" and to nothing else. 55 FR 40120.

Sallie Mae's arguments are without merit: Genna's claims are not preempted by the HEA.

## IV. Conclusion

For the foregoing reasons, Sallie Mae's motion to dismiss Counts 3, 4, 6, and 8 is GRANTED and its motion to dismiss the remaining Counts is DENIED.[4]

Noting the absence, at this stage of the litigation, of significant factual dispute, we take the additional step of REFERRING this case to Magistrate Judge Frank Maas in the hope that the parties can resolve the dispute consensually.

**SO ORDERED.**

April 16, 2012
New York, N.Y.

_____
U.S.D.J.

---

[4] This Court has considered all of the parties' other arguments and found them to be moot or without merit.